IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TERRY OTTER                                                                                          PLAINTIFF

      v.                                              CIVIL NO. 14-5038

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                                   DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Terry Otter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

      Plaintiff protectively filed an application for SSI on September 16, 2011, alleging disability since January 1, 1991, due to: mental problems, asthma, severe allergic reactions, scoliosis, "spinal depleosis," and high cholesterol. (Tr. 12, 182). An administrative hearing was held on September 20, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 21-55).

      By a written decision dated January 11, 2013, the ALJ found Plaintiff had the following severe impairments: "arthritis in the back, hands and knees; asthma; and allergies." (Tr. 11). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I,

Subpart P, Regulation No. 4. (Tr. 112). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work except:

> he must avoid all exposures to fumes, odors, dust, gases, and poorly ventilated areas. He must avoid even moderate exposure to extreme cold. He must avoid even moderate exposure to extreme heat. He is able to handle and finger bilaterally frequently.

(Tr. 12).

With the help of a vocational expert (VE), the ALJ determined Plaintiff had no past relevant work (PRW), but could perform the representative occupations of furniture rental clerk, inspector type jobs, and production assembler. (Tr. 16, 48-53). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 16).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on December 13, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeals briefs, and the case is ready for decision. (Docs. 10, 11).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case

differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.

**III. Discussion**

On appeal, Plaintiff argues the ALJ: (1) failed to adequately develop the record; (2) erred in formulating the RFC; and (3) identified inappropriate jobs at step five. (Doc. 10 at pp. 8-15).

**A. Development of the Record**

Plaintiff argues x-rays were necessary to reveal his disability. (Doc. 10 at pp. 10-11).

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

Despite stressing the importance of an x-ray in his brief, Plaintiff never attempted to obtain an x-ray at any time during the administrative process. He did not suggest an x-ray was needed at his hearing, and stressed his main impairments were asthma and allergies. (Tr. 24-25). It is Plaintiff's responsibility to provide medical evidence to show that he is disabled. See 20 C.F.R. §§ 404.1512, 416.912; see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (stating it is the claimant's burden to produce evidence to support claim). Remand is also only required when failure to develop the record further is prejudicial. See Onstead v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993). It is

unlikely x-rays would have led to a more limited RFC since, with the exception of Dr. C.R. Magness, a State physician, exams showed Plaintiff had normal range of motion and no musculoskeletal conditions. (Tr. 220-22, 230, 278-281). No physician suggested there was a reason to investigate further with x-rays, and Plaintiff received no treatment for his alleged musculoskeletal impairments, which suggests his condition was not as severe as alleged. See Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007).

The undersigned has carefully reviewed the record as a whole, which includes three medical exams during the relevant time period, the consultative exams of Dr. Terry Efird and Dr. Magness, and the opinions of the State's consulting physicians. The undersigned believes the record contains sufficient evidence for the ALJ to evaluate Plaintiff's disability claim. See McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011)("While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment ...").

Accordingly, the undersigned finds the ALJ fully and fairly developed the record. See Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

**B. Credibility**

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. It is well

established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966 (8th Cir. 2003).

The ALJ addressed the Polaski factors in the written decision, but discounted Plaintiff's allegations of disabling pain because Plaintiff received only conservative treatment, was non-compliant with treatment by continuing to smoke a pack per day, and did not take medications for his pain other than Tylenol. (Tr. 13-15). These were valid reasons for discounting Plaintiff's claims. See e.g., Wildman v. Astrue, 596 F.3d 959, 968-969 (8th Cir. 2010); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007)(deferring to the ALJ's credibility determination where the objective medical evidence did not support claims of physical impairments).

Accordingly, the undersigned finds the ALJ's credibility determination was based on substantial evidence.

**C. RFC**

Plaintiff's argues the ALJ erred by discounting Dr. Mangess's statement.[1]

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393. F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the

---

[1] Plaintiff also believes the ALJ should have formulated a restriction for each of Plaintiff's allergies (rather than a general environmental restriction), and should have included an additional RFC restriction that accounts for employer "liability from wrongful administration" or/and coworker distress of "watching him suffer as his throat shuts and breathing becomes labored until the paramedics arrive." (Doc. 10 at 14-15). These arguments are without merit.

assessment. 20 C.F.R. §404.1545(a)(3). A claimant's residual functional capacity is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. Id.

Dr. Magness examined Plaintiff on February 21, 2012. (Tr. 255-261). Dr. Magness noted Plaintiff's complaints of arthritis, muscle and back pain, breathing problems, and Plaintiff's ongoing smoking habit. (Tr. 255). An examination revealed Plaintiff had normal hearing and eye sight; a 20-percent to 30-percent reduction in shoulder range of motion; a 10-percent reduction in range of motion in his elbow, wrist, and hands; normal dorsiflexion, but a significant reduction in plantar flexion; normal range of cervical spine range of motion; a 25-percent reduction in lumbar spine flexion; 3/5 to 4/5 muscle strength in his upper extremities; and reduced grip strength. (Tr. 257-259). Plaintiff was able to perform fine manipulative functions such as holding a pen, writing, and picking up a coin; could stand and walk without assistive devices; and could heel and toe walk on his right leg, but not his left leg. (Tr. 259-260). Dr. Magness diagnosed Plaintiff with "COPD-tobacco, restrictive lung disease/asthma, polyarthralgia, arthritis, and degenerative joint disease," and opined Plaintiff had severe lift/carry restrictions and moderately severe walk/stand limitations. (Tr. 260).

The ALJ discounted Dr. Magness's opinion that Plaintiff had severe lift/carry and stand/walk restrictions because they were not supported by the rest of the record, which included normal exams from other physicians. (Tr. 14. 220-22, 230, 278-281). The ALJ also highlighted Plaintiff's failure

to seek medical treatment for a musculoskeletal impairment. (Tr. 14).[2] As Dr. Arvind Chopra, a State consulting physician, noted and the ALJ explained, Dr. Magness's opinion was not based on diagnostic testing. (Tr. 14, 274). The ALJ appropriately discounted Dr. Magness's opinion because it was not supported by diagnostic testing, was inconsistent with the mild reduction in range of motion the physician noted, and it was not consistent with the record. See e.g.,Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

The record as a whole shows the ALJ's RFC determination accounted for Plaintiff's impairments. Although the ALJ discounted Dr. Magness's extreme restrictions, the ALJ's conclusions were supported by the medical conclusions of the consulting physicians, who reviewed Dr. Magness's exam, and the other examinations of Plaintiff, which showed he had normal range of motion and no exertional impairments. (Tr. 220-22, 230, 278-281). Dr. Efird and the non-examining consulting physician stated Plaintiff's impairments were not disabling. (Tr. 232-236, 240, 252, 266-272, 274-275). Prison and ER doctors reported Plaintiff had normal exams, and the record shows Plaintiff's asthma and allergies were controlled with medications. (Tr. 29, 209, 219, 230). Controllable conditions are not disabling. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009). The ALJ also appropriately discounted Plaintiff's subjective complaints based, in part, on his pack per day smoking habit and conservative treatment. (Tr. 13-14).

Additionally, Plaintiff's reported activities are consistent with an ability to work. Plaintiff traveled out-of-state during the relevant period, and stated he performed chores, was capable of self-care, and attended church regularly. (Tr. 175, 230, 233, 235). Also notable is Plaintiff's statement

---

[2] Plaintiff testified his spine condition dated to 1977, which is relevant because the injury did not prevent him from working prior to his incarceration. (Tr. 47-48).

he had been searching for a job since his prison release. (Tr. 233). These activities suggest Plaintiff's impairments are not disabling. See e.g., Brown v. Astrue, 611 F.3d 941, 955-956 (8th Cir. 2010); See also Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)(stating a plaintiff who expresses a specific plan to work suggests his pain is not disabling).

Based on the foregoing, the undersigned finds there is substantial evidence to support the ALJ's RFC findings.

**D. Step Five**

Plaintiff's first contention is the RFC restriction that he must avoid even moderate exposure to heat was vague and not consistent with the jobs identified by the VE. (Doc. 10 at p. 12). Plaintiff's second argument is the sausage inspector job is inappropriate because it requires occasional exposure to extreme heat. (Doc. 10 at p. 13). Plaintiff also believes he cannot perform the sausage inspector job because it would cause him to have a life threatening allergic reaction because he has severe allergic reactions to food.

The ALJ's language that Plaintiff must avoid even moderate exposure to extreme heat was not vague. The undersigned has also reviewed the Dictionary of Occupational Titles (DOT) and its companion volume, the Selected Characteristics of Occupations, and confirmed the position involves no exposure to extreme heat. It does, however, involve occasional exposure to extreme cold, and is, therefore, not an appropriate job. Its suggestion by the VE was harmless, however, since the other positions recommended by the VE and adopted by the ALJ do not require exposure to extreme temperatures, and otherwise match the hypothetical and Plaintiff's RFC. See Brueggemann v. Barnhart, 348 F.3d 689, 695-696 (8th Cir. 2003)(stating an error is harmless when "the ALJ would have reached the same decision denying benefits" even absent the error).

Having carefully reviewed the record and the hearing transcript, the undersigned finds the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. (Tr. 49). In response, the VE testified Plaintiff could perform the representative occupations of furniture rental inspector (DOT # 295.357-018) and small products assembler (DOT # 706.684-022), which were positions appropriate for Plaintiff's RFC. (Tr. 51-52). Such testimony, based on hypothetical questions consistent with the record, constitutes substantial evidence. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

Accordingly, the undersigned finds the ALJ's step five determination is based on substantial evidence.

**IV. Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's complaint should be dismissed with prejudice.

Dated this 19th day of May, 2015.

*s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE